[No. 66646-1-I.   Division One.   October 24, 2011.]

THE STATE OF WASHINGTON, *Respondent*, v. LARRY ALAN HAYES, *Appellant*.

462

*Nancy P. Collins* (of *Washington Appellate Project*), for appellant.

*Mark E. Lindquist, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 BECKER, J. — A defendant must be a leader of a criminal profiteering organization, not just a member, in order to be convicted of the offense of leading organized crime. In this case, it was error to give instructions on accomplice liability that permitted appellant Larry Hayes to be convicted of leading organized crime even if the jury found that Hayes was merely aiding and abetting the leader. We therefore reverse the conviction. Two convictions for possession of a stolen vehicle are also reversed. The remaining twelve convictions are affirmed.

¶2 The trial of Hayes began on May 20, 2009. He was originally charged with fifteen counts under one cause number: one count of leading organized crime, six counts of identity theft, six counts of possession of stolen property, one count of possession of a stolen vehicle, and one count of possession of methamphetamine. Under a separate cause number, he was charged with another count of possession of a stolen vehicle. The two actions were consolidated for trial. The State alleged that each count, except for the drug charge and the consolidated stolen vehicle charge, was aggravated by virtue of being a major economic offense.

¶3 Benny Epstein, a longtime friend of Hayes, was a key State witness against him. Epstein testified under immunity and in exchange for a reduction in sentencing for unrelated crimes of violence and fraud. He testified that Hayes manufactured false identifications, such as driver's licenses and false credit cards, and gave them to his "shoppers," as Epstein called them, to use in buying specific merchandise for Hayes. The shoppers could then use the cards for themselves. Epstein named at least four people who shopped for Hayes. According to Epstein, Hayes told them where to shop, monitored their performance, kept tabs on the stores' policies concerning the use of credit cards, and gave the information to his shoppers. Epstein's most concrete allegation concerned a trip to Idaho planned by Hayes for the purpose of renting, and then selling, Harley Davidson motorcycles; Epstein admitted that he personally participated in this trip. Epstein also testified that Hayes and an associate used Epstein's storage unit to break into a neighboring unit in Gig Harbor where they stole credit card transaction receipts belonging to several Great Clips hair salons in Washington.

¶4 Another witness for the State was Dawn Fleming, Hayes' ex-girlfriend, who was granted partial immunity for testifying. She testified that she saw Hayes make false identifications using other people's names and use them to obtain merchandise. The State also presented the testimony

of five victims named in the counts alleging identity theft and possession of stolen property. These victims either had a credit card stolen or, after using a credit card at a Great Clips salon, had learned from police that a receipt with their account information had been stolen. Some had experienced fraudulent charges.

¶5 Police detectives testified they found files on Hayes' computers detailing his manufacture of false identifications. They found that he had equipment commonly used for making false licenses and credit cards, including sophisticated computers, document templates, lamination machines, supplies, and a laser paper cutter. In Hayes' bedroom, police found a silver briefcase filled with approximately 850 receipts from Great Clips hair salons. The Great Clips owner testified that the receipts were stolen from his storage unit. An employee of a rental car company testified that she, while working in southern Oregon, rented a Chevrolet Tahoe to Hayes, who was posing as a "Todd Cotton." The Tahoe was not returned. An owner of a rental car franchise in Oregon testified that her agency rented a white Hummer truck to a "Todd Cotton" and the truck was not returned. Police officers testified that these vehicles were reported stolen and were found in Hayes' possession.

¶6 The defense presented as witnesses some of the individuals Epstein had named as being Hayes' accomplices or shoppers. The defense witnesses testified that Epstein had committed many of the acts Hayes was charged with and that Hayes had not committed the acts. For example, Epstein's ex-girlfriend testified that Epstein made a lot of credit cards from receipts and worked only for himself. She said that Epstein traded "dope" to people for "things," and he kept merchandise in his storage unit—the one next to the unit from which the Great Clips receipts were stolen. Hayes' ex-wife testified that the briefcase full of receipts the police found in Hayes' bedroom looked exactly like the briefcase Epstein used to take everywhere with him. She

said Epstein worked only for himself but was "bossing" people around and having them "do his dirty work." She said Hayes did not have any people working for him. A long time acquaintance of Epstein and Hayes testified that once, when Epstein was arrested in Idaho, she helped to clean out his office and dispose of paperwork and receipts that looked like they belonged to other people. She recalled hearing Epstein talk about breaking into a storage unit next to his and ordering someone else to do it. Several witnesses said that Epstein often came to Hayes' house, driving different vehicles, including the rented Hummer that Hayes was driving when he was arrested.

¶7 The jury convicted Hayes of all counts except possession of methamphetamine. They found, using a special verdict form for each count, that each count was a major economic offense, except the consolidated stolen vehicle count. The trial court imposed an exceptional sentence of 180 months on the count of leading organized crime and concurrent sentences within the standard range on the other 14 counts. Hayes appeals.

## LEADING ORGANIZED CRIME

¶8 A person commits the offense of leading organized crime by intentionally "organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity." RCW 9A.82.060(1)(a). Hayes was convicted of this offense, and it was the one conviction for which he received an exceptional sentence on the basis that it was a major economic offense. He contends the conviction must be reversed because of instructional error.

¶9 Initially, the State submitted a "to-convict" instruction for this charge that did not mention accomplice liability. After the defense case presented evidence that Epstein, rather than Hayes, was the person principally responsible for the pattern of identity theft and possession of stolen

property, the State requested that the jury be instructed that accomplice liability could apply to the charge of leading organized crime. Over objection by Hayes, the court gave a "to-convict" instruction allowing conviction if the acts were committed by the defendant "or an accomplice" (instruction 41). The instruction stated as follows:

INSTRUCTION NO. 41

To convict the defendant of the crime of Leading Organized Crime in Count XV, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the period January 1, 2006 to September 11, 2007, the defendant, or an accomplice, intentionally organized, managed, directed, supervised or financed three or more persons in the commission of the crime of Identity Theft.

(2) That the defendant acted with the intent to engage in a pattern of criminal profiteering activity;

(3) That at least one of the acts contained within the elements listed above occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty. To convict the defendant of Leading Organized Crime all twelve jurors must agree that the same three acts of criminal profiteering constituting a pattern of criminal profiteering activity have been proved beyond a reasonable doubt. Furthermore, to convict the defendant of Leading Organized Crime all twelve jurors must agree that the same three or more persons were managed, directed, supervised or financed by the defendant, or an accomplice, with the intent to engage in a pattern of criminal profiteering activity.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

¶10 The instruction defining accomplice liability (instruction 11) specifically included "Leading Organized Crime" among the crimes of which a defendant can be guilty if it is committed by an accomplice. That instruction stated as follows:

### INSTRUCTION NO. 11

A person is guilty of a crime if it is committed by the conduct of another person for which he or she is legally accountable. A person is legally accountable for the conduct of another person when he or she is an accomplice of such other person in the commission of the crime.

A person is an accomplice in the commission of Identity Theft in the First Degree, Identity Theft in the Second Degree, Possession of a Stolen Vehicle, Possession of Stolen Property and Leading Organized Crime, if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

    (1)    solicits, commands, encourages, or requests another person to commit the crime; or

    (2)    aids or agrees to aid another person in planning or committing the crime.

The word "aid" means all assistance whether given by words, acts, encouragement, support, or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

A person who is an accomplice in the commission of a crime is guilty of that crime whether present at the scene or not.

¶11 Hayes contends that a person may not be convicted of "leading organized crime" by *aiding* the "leader"; rather, one must *be* a leader. He argues that allowing the jury to convict him of this crime as an accomplice was prejudicial error. We agree.

¶12 The primary objective of an inquiry into the construction of a statute is to ascertain and carry out the intent of the legislature. Our review is de novo. *State v. Montejano*, 147 Wn. App. 696, 699, 196 P.3d 1083 (2008).

¶13 The Supreme Court indicated support for Hayes' position when it briefly addressed the statute in *State v. Johnson*, 124 Wn.2d 57, 71, 873 P.2d 514 (1994). There, the defendant was convicted of two counts of assault for shooting at rival gang members. The trial court found that the defendant committed the assaults in an attempt to assert the dominance of his gang and to advance his own position in the hierarchy of the gang. Concluding the crimes were "gang-motivated," the court imposed an exceptional sentence. On appeal, Johnson claimed that the exceptional sentence violated the "real facts" doctrine in that if the findings were true, he should have been charged with leading organized crime. The Supreme Court found this argument to be specious, in part because there was no evidence that Johnson incited or induced any other member of the gang to commit violent acts. The statutory definition of the crime shows that it "is intended to apply to persons who 'lead' organized crime, rather than to all persons in a group who commit crimes." *Johnson*, 124 Wn.2d at 71.

¶14 The Washington statute defining accomplice liability provides that a person is guilty as an accomplice if he or she "solicits, commands, encourages, or requests" another person to commit a crime or aids another person in planning or committing the crime, knowing that such act will promote or facilitate the commission of the crime. RCW 9A.08.020(3)(a)(i). Nothing in the text of this statute precludes the application of accomplice liability principles to any particular crime. However, it is sometimes apparent from the way the legislature has defined a particular crime that traditional accomplice liability provisions are not applicable to that crime.

¶15 An example is found in *Montejano*. A person is guilty of the misdemeanor crime of riot "if, acting with three or

more other persons," that person threatens the use of force against another person. RCW 9A.84.010(1). But riot is a felony if "the actor is armed with a deadly weapon." RCW 9A.84.010(2)(b). In *Montejano*, the defendant—who was unarmed—was convicted of felony riot. The conviction was reversed on appeal because while guilt for riot is plainly predicated on group conduct, the term "actor" refers to the accused. Thus, to convict for felony riot, the accused must be the one with the deadly weapon, *Montejano*, 147 Wn. App. at 699-700, and accomplice liability as defined in RCW 9A.08.020(3) does not apply. The riot statute itself "defines the contours of the accomplice liability by setting forth the participation required by the accused." *Montejano*, 147 Wn. App. at 703. Because the defendant's participation did not include being personally armed, his conviction for felony riot had to be reduced to a misdemeanor.

¶16 The statute on leading organized crime is similar. It is committed by leading three or more other persons in a pattern of criminal profiteering activity. While guilt for the crime is predicated on group conduct, the conduct criminalized by the statute is the conduct of the leader. The participation required by the accused is leading three or more followers by organizing, managing, directing, supervising, or financing them. There must be a hierarchy in which the defendant is at the apex and three or more other persons are below.

¶17 Even so, the State argues, instructing the jury on accomplice liability for this charge was appropriate because a defendant may be both a principal and an accomplice where there is more than one leader of a criminal organization. In a stolen vehicle operation, one individual may lead by recruiting thieves and another individual may lead by recruiting mechanics to strip the cars. In the State's view, each individual would be not only a leader of organized crime but also an accomplice to the other leader. The State argued below that an accomplice would have the same liability as the leader so long as they shared the

requisite criminal intent. The State drafted instruction 41 to impose on the State the burden of proving that Hayes intended to commit or abet the crime. The State argued that if Epstein was the one who intentionally organized, managed, directed, supervised, or financed three or more followers in the identity theft racket, Hayes shared the liability because it was undisputed that he was providing the stolen identities. "He knew that this was going on. He knew that it was meant not only for Benny but Tyrease and anyone else that Benny was running. So he still has to—he still has to share the intent of there being an organization that was being run by Benny."[1]

¶18 The State's reasoning is unpersuasive as a justification for the instructions employed in the present case. There may well be several individuals involved in a criminal operation, each of them sharing the intention that the operation will engage in a pattern of criminal profiteering activity that involves three or more other persons. Still, any such individual cannot be guilty of the offense of leading organized crime unless found to have personally organized, managed, directed, supervised, or financed the activity of three or more other persons. Under the accomplice language included in instructions 11 and 41, the jury was permitted to find Hayes guilty of leading an organized identity theft operation if they determined that Epstein was leading three or more other persons and Hayes was assisting him, even if Hayes' assistance was limited to furnishing stolen identities and did not include personal involvement with anyone else's activities. As worded, these instructions impermissibly relieved the State of the burden of proving that Hayes was a *leader* of organized crime. Hayes raised a timely objection that made this problem sufficiently clear.[2] His conviction for leading organized crime must be reversed.

---

[1] Report of Proceedings (June 18, 2009) at 12-13.

[2] Report of Proceedings (June 18, 2009) at 8-17.

■ ¶19 Hayes asserts in a one-paragraph argument that the remaining convictions were tainted by the instructional error because allowing the State to proceed with its accomplice liability theory on the count of leading organized crime opened the door to "a host of evidence implicating Hayes in uncharged offenses."[3] Hayes does not separately assign error concerning this issue, he does not explicitly set forth the relief he seeks, and he does not identify a legal theory upon which relief could be granted. To the extent this single paragraph is intended as an argument for reversal of all the remaining convictions, we reject it as inadequately briefed and argued. RAP 10.3; *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

## CAUTIONARY INSTRUCTION

■ ¶20 A standard instruction warns the jury to act with great caution when examining the testimony of an accomplice. "You should not find the defendant guilty upon such testimony alone unless, after carefully considering the testimony, you are satisfied beyond a reasonable doubt of its truth." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 6.05 at 184 (3d ed. 2008) (WPIC). Counsel for Hayes did not request the instruction. Hayes contends counsel rendered ineffective assistance by failing to request it, particularly with respect to Epstein because of the importance of his testimony that Hayes led the "three or more people" required to prove the charge of leading organized crime. The lack of corroboration of Epstein's testimony was a central theme for the defense. Where the testimony of an accomplice is uncorroborated, the failure to give the cautionary instruction on request may be reversible error. *State v. Harris*, 102 Wn.2d 148, 152, 685 P.2d 584 (1984), *overruled on other grounds by State v. Brown*, 113 Wn.2d 520, 554, 782 P.2d 1013 (1989).

■ ¶21 To show ineffective assistance of counsel, Hayes must show that his counsel's performance was deficient

---

[3] Appellant's Br. at 17.

and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

¶22 The instruction would have highlighted Epstein's unreliability. The State admits the instruction likely would have been given if requested. But a defendant does not establish ineffective assistance simply by identifying an instruction that would have likely been given had it been requested. *State v. Cienfuegos*, 144 Wn.2d 222, 227, 25 P.3d 1011 (2001). Hayes does not show prejudice. His principal argument is that the instruction would have helped to undermine Epstein's testimony that Hayes was the leader of a criminal organization. As discussed above, the conviction on that count will be reversed. Hayes does not show that Epstein's testimony was uncorroborated as it pertained to other charges. Moreover, the jury received the standard instruction about factors that may be considered in evaluating the credibility of a witness.[4] Hayes was able to argue extensively that Epstein's testimony was self-serving. We are not persuaded that the outcome of the trial would have been different if the instruction had been given.

## ALTERNATIVE MEANS

¶23 To safeguard the defendant's constitutional right to a unanimous verdict as to an alleged crime that can be committed by alternative means, "substantial evidence of each of the relied-on alternative means must be presented." *State v. Smith*, 159 Wn.2d 778, 783, 154 P.3d 873 (2007). Hayes was charged with leading organized crime, six counts of possession of stolen property, and two counts of possession of a stolen vehicle. Hayes contends all of these offenses had alternative means for which the State failed to present substantial evidence.

---

[4] WPIC 1.02; Instruction 1.

### Leading organized crime

¶24 Although we reverse Hayes' conviction for leading organized crime, we include that offense in our analysis as the issue may arise again if Hayes is retried on that charge. The first step is to identify the alternative means presented to the jury. Leading organized crime as it was charged in this case has five alternative means: the defendant must intentionally, and with the intent to engage in a pattern of criminal profiteering activity, (1) organize, (2) manage, (3) direct, (4) supervise, or (5) finance three or more persons. RCW 9A.82.060(1)(a); *State v. Strohm*, 75 Wn. App. 301, 305, 879 P.2d 962 (1994), *review denied*, 126 Wn.2d 1002 (1995). Hayes contends there was a lack of evidence supporting each of these means. We disagree. Epstein's testimony by itself, if believed, at a minimum established that Hayes organized, managed, directed, supervised, and financed three or more persons with the intent to steal motorcycles during the "shopping" trip to Idaho and that he did the same with the intent to get the Great Clips receipts from the storage units and use them to commit identity theft.

### Possession of stolen property

¶25 The State charged Hayes with second degree possession of stolen property in counts 4, 6, 8, 10, 12, and 13. The specific charge in each count was that Hayes possessed a stolen access device. "A person is guilty of possessing stolen property in the second degree if: . . . (c) He or she possesses a stolen access device." RCW 9A.56.160(1). Instruction 25 exemplified the to-convict instructions for these counts. It informed the jury that to convict Hayes of count 4, it must be proved beyond a reasonable doubt:

(1) That on or about the 11th day of September, 2007, the defendant, or an accomplice, knowingly possessed stolen property;

(2) That the defendant acted with knowledge that the property had been stolen;

(3) That the defendant, or an accomplice, withheld or appropriated the property to the use of someone other than the true owner or person entitled thereto;

(4) That the stolen property was an access device belonging to John Harlowe;

(5) That the acts occurred in the State of Washington.

The instructions on counts 6, 8, 10, 12, and 13 were identical except that they referred to different victims. To prove these counts, the State presented evidence that the Great Clips receipts bearing the credit card information of the victims were found by police in a briefcase in Hayes' bedroom, testimony by the Great Clips owner that the receipts found were receipts from credit card transactions by customers, testimony by Epstein that Hayes had stolen the receipts from the storage unit, testimony by customers who had made a credit card transaction at Great Clips, and testimony about two stolen credit cards that were found with the Great Clips receipts. The victims had been notified of the thefts by police or had experienced fraudulent charges. Police and the Great Clips owner testified to receipts found in Hayes' possession bearing the names of other customers as well.

¶26 Hayes neither contends that the to-convict instructions on these six counts included alternative means nor argues that RCW 9A.56.160(1)(c) creates alternative means. His argument rests upon instruction 23, in which the court provided the definition of "possessing stolen property" found in RCW 9A.56.140(1).

A person commits the crime of possessing stolen property in the second degree when he or she knowingly possesses a stolen access device.

Possessing stolen property means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

According to Hayes, this definition identifies five alternative means: knowingly (1) receiving, (2) retaining, (3) possessing, (4) concealing, or (5) disposing of stolen property. He contends there is no evidence that he concealed or disposed of the stolen credit card access information identified in the six counts and accordingly all six convictions must be reversed because juror unanimity was not assured.

¶27 Washington courts have generally resisted attempts to use definitional statutes to expand the number of alternative means for a given offense. In *Strohm*, for example, the defendant was convicted of trafficking in stolen property, a crime that has eight alternative means:

> "A person who knowingly [1] initiates, [2] organizes, [3] plans, [4] finances, [5] directs, [6] manages, or [7] supervises the theft of property for sale to others, or [8] who knowingly traffics in stolen property, is guilty of trafficking in stolen property in the first degree."

*Strohm*, 75 Wn. App. at 307 (quoting former RCW 9A.82-.050(2) (1984)). For purposes of the eighth means, the statute supplies a separate definition of the word "traffic." It means

> to sell, transfer, distribute, dispense, or otherwise dispose of stolen property to another person, or to buy, receive, possess, or obtain control of stolen property, with intent to sell, transfer, distribute, dispense, or otherwise dispose of the property to another person.

RCW 9A.82.010(19). This definition of "traffic" was included with the instructions in *Strohm*. Strohm argued on appeal that the definition of "traffic" in RCW 9A.82.010(19) sets up additional alternative means, or alternative "means within a means." We rejected the proposition that definitional statutes create additional alternative means. "The definition of 'traffic' in the definition section of the statute does not add to the criminal statute; its only purpose is to provide understanding." *Strohm*, 75 Wn. App. at 309; *see also Smith*, 159 Wn.2d at 783-90; *In re Pers. Restraint of*

*Jeffries*, 110 Wn.2d 326, 339-40, 752 P.2d 1338, *cert. denied*, 488 U.S. 948 (1988); *State v. Laico*, 97 Wn. App. 759, 762, 987 P.2d 638 (1999) ("Merely because a definition statute states methods of committing a crime in the disjunctive does not mean that the definition creates alternative means of committing the crime.").

¶28 Consistent with these authorities, we hold that the reference to "receive, retain, possess, conceal, or dispose of stolen property" in RCW 9A.56.140(1) is definitional. It does not create alternative means of a crime. This can be seen by comparing it to RCW 9A.56.160, the statute that actually establishes the crime of possessing stolen property in the second degree.

(1) A person is guilty of possessing stolen property in the second degree if:

(a) He or she possesses stolen property, other than a firearm as defined in RCW 9.41.010 or a motor vehicle, which exceeds seven hundred fifty dollars in value but does not exceed five thousand dollars in value; or

(b) He or she possesses a stolen public record, writing or instrument kept, filed, or deposited according to law; or

(c) He or she possesses a stolen access device.

(2) Possessing stolen property in the second degree is a class C felony.

RCW 9A.56.160. Under this statute, there are three alternative means for committing second degree possession of stolen property. One of them is by possession of a stolen access device, the only means charged against Hayes. RCW 9A.56.160(1)(c).

¶29 By contrast, RCW 9A.56.140, on which instruction 23 is based, is not intended to define a particular crime. This statute serves other purposes. It defines "possessing stolen property," it provides that certain circumstances do not amount to a defense, it establishes a rebuttable presumption in certain circumstances, and it provides that certain circumstances do amount to a defense.

(1) "Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

(2) The fact that the person who stole the property has not been convicted, apprehended, or identified is not a defense to a charge of possessing stolen property.

(3) When a person has in his or her possession, or under his or her control, stolen access devices issued in the names of two or more persons, or ten or more stolen merchandise pallets, or ten or more stolen beverage crates, or a combination of ten or more stolen merchandise pallets and beverage crates, as defined under RCW 9A.56.010, he or she is presumed to know that they are stolen.

(4) The presumption in subsection (3) of this section is rebuttable by evidence raising a reasonable inference that the possession of such stolen access devices, merchandise pallets, or beverage crates was without knowledge that they were stolen.

(5) In any prosecution for possessing stolen property, it is a sufficient defense that the property was merchandise pallets that were received by a pallet recycler or repairer in the ordinary course of its business.

RCW 9A.56.140.

¶30 Hayes was charged and convicted under RCW 9A.56.160(1)(c) with possessing a stolen access device. Because that was the only means presented to the jury as a basis for convicting Hayes, possessing stolen property in the second degree, it was the only means that had to be supported by substantial evidence.

¶31 Hayes contends, however, that proof of concealing or disposing of the credit card information became necessary under *State v. Lillard*, 122 Wn. App. 422, 93 P.3d 969 (2004), *review denied*, 154 Wn.2d 1002 (2005). This court held in *Lillard* that where the trial court includes " 'knowingly received, retained, possessed, concealed or disposed of sto-

len property' " in the to-convict instruction, these terms will be treated as alternative means the State must prove. *Lillard*, 122 Wn. App. at 434-35. *Lillard* relied on *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998), where the State was held to have assumed the burden of proving venue, even though venue was not an element, where it was included in the to-convict instruction without objection by the State. *Lillard*, 122 Wn. App. at 435 n.26.[5]

¶32 Hayes contends the State here assumed the burden of proving that he concealed or disposed of the stolen access devices. This argument fails because, unlike in *Lillard*, the terminology from RCW 9A.56.140(1) did not find its way into the to-convict instructions for counts 4, 6, 8, 10, 12, and 13. The State adequately proved that Hayes possessed the stolen credit card information. There was no need for the State to introduce evidence that he concealed or disposed of it.

Possession of a stolen vehicle

¶33 The State charged Hayes with two counts of possession of a stolen vehicle. For count 2 of the main action, Hayes was accused of stealing the Chevrolet Tahoe that had been rented in the name of Todd Cotton. Police observed it parked outside his house in Gig Harbor and then later recovered it in Puyallup, Washington, several blocks from a house belonging to a friend of Hayes. For count 1 of the consolidated action, he was accused of stealing the Hummer truck that he was driving when arrested. This vehicle had also been rented in the name of Todd Cotton.

¶34 The statute defining the offense provides, "A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56-.068(1) (alteration in original). The pattern to-convict in-

---

[5] *Lillard* summarily applied *Hickman* to hold, in response to an issue raised in a pro se supplemental brief, that the definitional terms in RCW 9A.56.140(1) were transformed into alternative means when inadvertently included in a to-convict instruction. This is not a holding we are inclined to expand.

struction for this offense is found in 11A WPIC 77.21, at 177 (3d ed. 2008):

> To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about (date) , the defendant knowingly [received] [retained] [possessed] [concealed] [disposed of] a stolen motor vehicle;
>
> (2) That the defendant acted with knowledge that the motor vehicle had been stolen;
>
> (3) That the defendant withheld or appropriated the motor vehicle to the use of someone other than the true owner or person entitled thereto;
>
> (4) That any of these acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

(Emphasis added.) A comment to the pattern instruction explains that the reference in the first subsection to "knowingly [received] [retained] [possessed] [concealed] [disposed of]" was incorporated from RCW 9A.56.140 to supply the mens rea element the legislature must have intended.

¶35 As the brackets in the pattern instruction indicate, it is not necessary to use each of the five terms. In this case, however, all five terms were included in the to-convict instructions concerning the two stolen vehicles. Instruction 20 included as an element of the crime "(1) That on or about the 11th day of September, 2007, the defendant, or an accomplice, knowingly received, retained, possessed, concealed, or disposed of, a stolen motor vehicle; to wit, a 2007 Chevrolet Tahoe." Instruction 42, concerning the Hummer, was similar.

¶36 The State did not object to the inclusion of all five bracketed terms in the to-convict instruction. Hayes contends all five became alternative means for which the State assumed the burden of supplying substantial evidence, as in *Lillard*. The State does not argue otherwise. Accordingly, we limit our analysis to whether there was substantial evidence to support each alternative means that Hayes challenges. Hayes contends the record lacks substantial evidence that he concealed and disposed of either the Tahoe or the Hummer.

¶37 Police first observed the Tahoe parked at Hayes' residence. They recovered it miles away, near the house of a person they had recently seen at Hayes' residence. As the State argues, the jury could reasonably infer that Hayes concealed the vehicle by moving it, or arranging to have it moved, to where police were less likely to see it. But the record lacks substantial evidence to prove that Hayes "disposed of" the Tahoe. The parties agree that "dispose of" means to transfer into new hands or to the control of someone else. There is no evidence to show that someone other than Hayes himself drove the Tahoe to Puyallup or that he transferred control of it to another person.

¶38 The evidence that Hayes allowed Epstein to drive the Hummer is arguably substantial evidence that he at least temporarily "disposed" of it. But the State does not identify any evidence of concealment. In fact, Hayes was driving the Hummer when he was arrested.

¶39 In summary, we are treating concealment and disposal as alternative means, not because they necessarily are alternative means, but because they were listed in the to-convict instructions for the two counts of possession of a stolen vehicle and under *Lillard* the State was obligated to support them with substantial evidence. Because the record lacks substantial evidence that Hayes disposed of the Tahoe or that he concealed the Hummer, the convictions on those two counts will be reversed.

## SUFFICIENCY OF EVIDENCE

¶40 Hayes challenges the sufficiency of the evidence supporting counts 9 and 10, second degree identity theft and second degree possession of stolen property. Both counts concerned an individual named Jeffrey Call who did not attend the trial.

¶41 On a sufficiency challenge, this court reviews whether, taking the evidence and all inferences therefrom in the light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

¶42 To convict Hayes of identity theft as alleged in count 9, one element the State had to prove was that Hayes or an accomplice "knowingly obtained, possessed, or transferred a means of identification or financial information of Jeffrey Call." Instruction 30. To convict Hayes of possession of stolen property as alleged in count 10, one element the State had to prove was that "the stolen property was an access device belonging to Jeffrey Call." Instruction 31. The identity of the victim is a key element of identity theft, and the charge is not proved if the alleged victim is not a real person. *State v. Berry*, 129 Wn. App. 59, 62, 66-68, 117 P.3d 1162 (2005), *review denied*, 158 Wn.2d 1006 (2006).

¶43 One of the credit card receipts stolen from the Great Clips storage unit and found in Hayes' possession bore the name of Jeffrey Call and a corresponding signature. Call did not testify at trial. Hayes contends that without Call's testimony, the evidence was insufficient to show that a real person was a victim in counts 9 and 10.

¶44 The Great Clips salon owner testified that the receipts Hayes stole were receipts of credit card transactions with customers who came into his salons and used their credit cards to purchase haircuts. A reasonable infer-

ence from this testimony is that the customers who used their credit cards to pay for haircuts were real persons. The receipt with Jeffrey Call's credit card information on it bore the signature of its purported owner. We conclude the evidence was sufficient to allow the inference that Jeffrey Call was a real person and that he was a victim of the conduct alleged against Hayes in counts 9 and 10. While Hayes suggests the innocent explanation that Call might have authorized him to use his credit card, the State was not obligated to rule out this possibility in order to prove the charge.

## EXCEPTIONAL SENTENCE

¶45 Hayes contends the exceptional sentence imposed upon him for the conviction of leading organized crime cannot stand because it may have been impermissibly premised upon accomplice liability.

¶46 The trial court concluded that all other convictions would "merge" into the conviction for leading organized crime for purposes of determining the offender score. The court then imposed an exceptional sentence of 180 months on the conviction for leading organized crime, based on the jury's separate verdict that the crime was a major economic offense. The court imposed standard range sentences to run concurrently on the other 14 convictions.

¶47 Hayes argues that the aggravating factor of a major economic offense as defined in RCW 9.94A.535(3)(d) cannot be the basis for an exceptional sentence unless there is a jury finding, absent here, that Hayes himself engaged in the actions that made his crime a major economic offense. Because we reverse Hayes' conviction for leading organized crime, the only crime for which he was given an exceptional sentence, this issue is moot and we decline to address it.

## DOUBLE JEOPARDY

¶48 The court noted in the judgment and sentence that for purposes of determining the offender score, "all current offenses are one offense under Leading Organized Crime Count."[6] This notation reflected an apparent concession by the State to the defense argument that the convictions had to be merged either because of a double jeopardy problem[7] or because of the mandatory joinder provision in RCW 9A.82.050.[8] Each conviction was listed separately.

¶49 Hayes argues that it is a double jeopardy violation to let the convictions for identity theft, possession of stolen property, and possession of a stolen vehicle remain on the judgment because they were merged into the conviction for leading organized crime. Our reversal of the conviction for leading organized crime removes the basis for this argument, and it would not be persuasive even if that conviction remained standing.

¶50 "Where a defendant's act supports charges under two criminal statutes, a court weighing a double jeopardy challenge must determine whether, in light of legislative intent, the charged crimes constitute the same offense." *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 815, 100 P.3d 291 (2004). If the legislature authorized cumulative punishments for more than one of the crimes committed by the defendant's act, "then double jeopardy is not offended." *State v. Freeman*, 153 Wn.2d 765, 771, 108 P.3d 753 (2005). It is abundantly clear that the underlying offenses of identity theft, possession of stolen property, and possession of a stolen vehicle are not the same offenses as leading organized crime. The identity theft statute in par-

---

[6] Clerk's Papers at 113.

[7] Clerk's Papers at 203 (State's sentencing brief).

[8] *See generally* Report of Proceedings (Sept. 11, 2009, sentencing hearing). Hayes has abandoned any argument that RCW 9A.82.085 is relevant to a double jeopardy analysis, as he does not cite that statute on appeal.

ticular states that every person "who, in the commission of identity theft, shall commit any other crime may be punished therefor as well as for the identity theft." RCW 9.35.020(6). Furthermore, the underlying offenses are not the same as leading organized crime in law and fact under the test of *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932).

¶51 The conviction for leading organized crime is reversed. The two convictions for possession of a stolen vehicle are reversed. The remaining convictions are affirmed.

LEACH, A.C.J., and SCHINDLER, J., concur.