

This opinion was filed for record

at 8 a.m. on Aug 2, 2018

_Susan L. Carlson_
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | NO. 93770-2 |
| Respondent, | |
| v. | EN BANC |
| ROBERT LEE TYLER, | |
| Petitioner. | Filed **AUG 0 2 2018** |

STEPHENS, J.—Robert Tyler challenges his conviction for possession of a stolen vehicle. Relying on *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998), he contends that the State was required to prove he engaged in all the actions that constitute "possession" of a stolen vehicle because these were listed in the to-convict jury instruction. Further arguing that the evidence is insufficient to prove he "disposed of" a stolen vehicle, Tyler argues that his conviction must be reversed and the case dismissed with prejudice.

We affirm Tyler's conviction, although on different grounds than those relied on by the Court of Appeals below. That court viewed the jury instructions as setting

forth alternative means of possessing stolen property, which became the "law of the case" under *Hickman*. However, it concluded that *Hickman* was abrogated by *Musacchio v. United States*, ___ U.S. ___, 136 S. Ct. 709, 193 L. Ed. 2d 639 (2016). This was error in light of our recent decision in *State v. Johnson*, 188 Wn.2d 742, 747, 399 P.3d 507 (2017), which confirmed that *Hickman* remains good law and the State is generally required to prove all elements set forth in a to-convict jury instruction. However, *Hickman*'s law of the case rule is inapplicable here because possession of a stolen motor vehicle is a single means crime, and the given instructions did not alter that fact. Accordingly, the State was not required to prove that Tyler "disposed of" a stolen vehicle but only that he "possessed it" in one of the defined ways under RCW 9A.56.140(1). Because it is undisputed that the evidence established possession, the jury's verdict stands, and we affirm Tyler's conviction.

## BACKGROUND AND PROCEDURAL HISTORY

A Snohomish County deputy sheriff discovered a white Honda sedan and a pickup truck parked 20 feet apart on a remote, forested service road. The deputy observed that the sedan was lifted up on a jack with the driver's side wheels elevated in the air. Upon approaching the pickup truck, the deputy encountered four individuals: Robert Tyler and Rebekah Nicholson sat in the truck's passenger

-2-

compartment, Tyson Whitt was partially covered by a tarp in the bed of the truck,[1] and Anthony Coleman stood outside the truck.

Tyler informed the deputy that he owned the truck and produced a bill of sale. Looking into the truck's passenger cabin, the deputy observed what appeared to be stripped car parts, including a disconnected car stereo and speakers. Upon further inquiry by the deputy, Tyler claimed not to know anything about these items, neither how they came to be in his truck nor to whom they belonged. When asked who owned the Honda, Tyler replied that he did not know. Upon inspecting the sedan, the deputy observed that it seemed as if it was being stripped of its parts: bolts on the suspended wheels were partially loosened, and the stereo and front door speakers were missing. The deputy found in the sedan's ignition a key with a Chrysler brand logo and noticed that the key had been "shaved," suggesting potential vehicle theft.

The deputy ran a computer search of the sedan's license plate number and learned that the sedan had been reported stolen the prior day. He then contacted the vehicle's owner and confirmed that the brand of car stereo that had been in the sedan matched that of the disconnected car stereo in the passenger compartment of Tyler's truck.

---

[1] Whitt was arrested, charged, and convicted of stealing the Honda sedan. *State v. Tyler,* 195 Wn. App. 385, 391 n.1, 382 P.3d 699 (2016).

Following further questioning, the deputy placed Tyler under arrest. During a subsequent interrogation, Tyler stated that he had observed Whitt taking parts out of the sedan, and that he deduced the sedan Whitt had been driving was stolen. Tyler denied stealing the vehicle. The State charged Tyler with one count of possession of a stolen vehicle.

At trial, the court's to-convict jury instruction read, in relevant part, "To convict the defendant of the crime of possessing a stolen motor vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt: (1) That on or about the 10th day of January, 2014, the defendant knowingly received, retained, possessed, concealed, disposed of a stolen motor vehicle." Clerk's Papers (CP) at 27 (jury instruction 4). A separate jury instruction stated, in relevant part, "Possessing a stolen motor vehicle means knowingly to receive, retain, possess, conceal, or dispose of a stolen motor vehicle." CP at 26 (jury instruction 3). Neither party objected to these instructions. The jury found Tyler guilty of possession of a stolen vehicle.

On appeal, Tyler argued inter alia that the "'to convict'" jury instruction "listed as alternative means that defendant received, retained, possessed, concealed, or disposed of the stolen vehicle." Br. of Appellant at 1. Relying on the law of the case doctrine as set forth in *Hickman*, 135 Wn.2d 97, under which the State must

prove all elements listed in to-convict instructions, Tyler urged that his conviction must be reversed and the case dismissed with prejudice because the evidence was insufficient to show he "disposed of" a stolen vehicle. Suppl. Br. of Pet'r at 5-6, 12-13.

The Court of Appeals requested additional briefing from the parties regarding the relevance of an intervening case, *Musacchio*, 136 S. Ct. 709. There, the United States Supreme Court rejected application of the law of the case doctrine in a similar context and held that a sufficiency challenge should be assessed against the statutory elements of the crime charged, regardless of any heightened command in the jury instructions. *Id.* at 715. Concluding that *Musacchio* superseded Washington case law and effectively abrogated *Hickman*, the Court of Appeals affirmed Tyler's conviction. *State v. Tyler,* 195 Wn. App. 385, 399-400, 382 P.3d 699 (2016).

At about the same time as this case, Division One of the Court of Appeals had reached a similar conclusion in *State v. Johnson*, No. 73113-1-I, slip op. (Wash. Ct. App. June 6, 2016) (unpublished) https://www.courts.wa.gov/opinions/ pdf/731131.pdf. We granted review in *Johnson* to consider *Musacchio*'s import on Washington's law of the case doctrine, recognizing that Division Three had taken a contrary view. *See State v. Jussila,* 197 Wn. App. 908, 912-13, 392 P.3d 1108 (2017). We disagreed with the Court of Appeals' reliance on *Musacchio*, holding

that "our long standing 'law of the case' doctrine continues to apply." *Johnson*, 188 Wn.2d at 756. Furthering the goals of finality, efficiency, and fairness in the judicial process, we concluded that the law of the case doctrine helps avoid prejudice to the parties and ensures that appellate courts review cases under the same rules considered by juries. *Id.* at 757. Nonetheless, we affirmed Johnson's conviction, finding the evidence sufficient when measured against the to-convict instruction.

We stayed consideration of Tyler's petition for review pending the final decision in *Johnson*. Following issuance of the *Johnson* opinion, we granted partial review. *State v. Tyler*, 189 Wn.2d 1016, 404 P.3d 497 (2017).

## ANALYSIS

Tyler makes a number of cascading and alternative arguments, but they are all premised on the view that the jury instructions required proof that he engaged in each of the listed means of possessing a stolen motor vehicle. His main argument is that the to-convict instruction set forth several alternative means of committing possession of a stolen motor vehicle—"received, retained, possessed, concealed, disposed of." CP at 27; *see* Pet. for Review at 5-6; Br. of Appellant at 8; Suppl. Br. of Pet'r at 8. In his supplemental brief, he additionally argues that the instruction should be read as mandating proof of *all* the listed actions to establish possession of a stolen vehicle. Suppl. Br. of Pet'r at 7-8. In either case, under his argument the

State would need to demonstrate sufficient evidence of all means of possession because the State did not elect a specific means and no unanimity instruction was given to the jury on alternative means. *See State v. Woodlyn*, 188 Wn.2d 157, 164, 392 P.3d 1062 (2017). Because the evidence is insufficient to show he "disposed of" a stolen motor vehicle, concludes Tyler, his conviction must be reversed.[2]

The State counters that the list of ways one can possess a stolen motor vehicle (including the "disposed of" provision) is merely definitional. *See* RCW 9A.56.140(1) ("'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto."). It reads the to-convict instruction in the context of the definitional instruction immediately preceding it and argues that the sole element the State had to prove was Tyler's "possession" of a stolen motor vehicle. *See* Suppl. Br. of Resp't at 3-11; *see also* RCW 9A.56.068(1) ("A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." (alteration in original)). Accordingly, the State concludes that "[t]he law of the case doctrine

---

[2] Tyler's sufficiency of the evidence argument is limited to the "disposed of" provision. Br. of Appellant at 8-9.

does not apply in this case" to require proof that Tyler "disposed of" a stolen motor vehicle. Suppl. Br. of Resp't at 11.[3]

We agree with the State. Possession of a stolen vehicle is not an "alternative means" or "all means" crime, and the jury instructions in this case did not make it so. Because the instructions did not obligate the State to prove Tyler "disposed of" a stolen motor vehicle and the evidence was otherwise sufficient, we affirm Tyler's conviction. Given our resolution of the case on this basis, it is unnecessary to address the law of the case doctrine and related issues.

I. The Jury Instructions Did Not Require the Jury To Find That Tyler "Disposed of" a Stolen Vehicle To Convict Him of Possession of a Stolen Vehicle

Tyler acknowledges, as he must, that possession of stolen property is a single means crime. *See* Br. of Appellant at 7; Suppl. Br. of Pet'r at 7. The relevant statutory provisions state that "[a] person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle." RCW 9A.56.068(1) (alteration in original). "'Possessing stolen property' means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen

---

[3] Alternatively, the State argues that the evidence was sufficient to prove Tyler "disposed of" the motor vehicle and his conviction should be affirmed on that basis. Suppl. Br. of Resp't at 12-17. While we do not disagree with the State's assessment of the evidence, when viewed in a light most favorable to the verdict, our resolution of this case makes it unnecessary to reach that issue.

and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto." RCW 9A.56.140(1). The multifaceted description of the ways in which one may possess stolen property is properly regarded as definitional, enhancing the understanding of the single means crime. *See State v. Hayes*, 164 Wn. App. 459, 477, 262 P.3d 538 (2011) (RCW 9A.56.140(1) merely defines possession, and "does not create alternative means of a crime"); *State v. Linehan*, 147 Wn.2d 638, 646, 56 P.3d 542 (2002) ("Definition statutes do not create additional alternative means of committing an offense."); *State v. Owens*, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014) ("the alternative means doctrine does not apply to mere definitional instructions; a statutory definition does not create a 'means within a means'"); *State v. Sandholm*, 184 Wn.2d 726, 734, 364 P.3d 87 (2015) ("Nor has it been found that . . . definitional statutes create alternative means."); *State v. Porter*, 186 Wn.2d 85, 91, 375 P.3d 664 (2016) (definitional terms may be read as defining or limiting essential elements).[4]

---

[4] Though the parties do not discuss our decision in *Porter*, there we considered the latter clause of RCW 9A.56.140(1) in the context of a challenge to a charging document. We concluded that the information did not need to allege that "the defendant withheld or appropriated the vehicle for the use of a person other than the true owner" because the definition of "possess" merely "defines and limits the scope of the essential elements of the crime of unlawful possession of a stolen motor vehicle." *Porter*, 186 Wn.2d at 87, 91.

Tyler nonetheless insists that the jury instructions given in this case, which included the definitional descriptions in the to-convict instruction, created either an "alternative means" crime or an "all means" crime. We disagree. We find persuasive the reasoning of the Court of Appeals in *State v. Makekau*, 194 Wn. App. 407, 414, 378 P.3d 577 (2016), which addressed a similar to-convict instruction that set forth the statutory definition of possession of a stolen vehicle in listing the essential elements.[5] The court in *Makekau* concluded that the to-convict instruction could not reasonably be read as altering the nature of the crime charged, which is a single means offense. Indeed, "the only purpose of RCW 9A.56.140(1) is definitional—to provide a better understanding of the single element stated in RCW 9A.56.068(1)." *Makekau*, 194 Wn. App. at 414. Taking a common sense approach, the court recognized that "the five terms in RCW 9A.56.140(1) are so closely related that they do not describe distinct acts apart from actually possessing the stolen vehicle, but are 'merely facets of the same criminal conduct.' *Sandholm*, 184 Wn.2d at 734. For example, it would be hard to imagine a situation where a person receives,

---

[5] The instruction required the State to prove Makekau "'knowingly received, possessed, concealed, or disposed of' a stolen motor vehicle." 194 Wn. App. at 414 & n.1. One notable difference between the instruction in *Makekau* and the to-convict instruction here is that the *Makekau* instruction repeated the disjunctive term "or" from the definitional instruction, while the to-convict instruction in Tyler's case omitted it. As discussed further in Part II below, we do not find that distinction dispositive when the instructions are considered as a whole.

-10-

retains, conceals, or disposes of a stolen vehicle without also possessing it at some time." *Id.* (citing *Owens*, 180 Wn.2d at 99). Our prior decisions provide "no indication that including a list of disjunctive terms that did not constitute alternative means in the to-convict instruction transformed those terms into alternative means." *Id.* at 420.

*Makekau* is persuasive in recognizing that the mere repetition of the definitional list of "possession" in the to-convict instruction does not create alternative means. *See id.* at 419 ("If definitions in a separate instruction do not create alternative means, there is no reason that including the definitions in the to-convict instruction should change the result."). Even if the to-convict instruction is read in isolation, the four-paragraph list of the elements does not suggest that "received, retained, possessed, concealed, disposed of" are alternative means. CP at 27. The terms in the statutory definition are closely related, in that one may not retain, conceal, or dispose of a stolen vehicle without first receiving and possessing the vehicle. Tyler argues that one may possess stolen property without knowledge that it is stolen but later discard it upon learning that it is stolen, thereby upending *Makekau*'s interpretation. Suppl. Br. of Pet'r at 10 n.9. But Tyler fails to recognize that even this scenario supports the reasoning in *Makekau*, because the hypothetical

defendant will possess and retain the stolen property, however briefly, between the time the theft is learned of and the time the property is disposed of.

Tyler cites *State v. Lillard*, 122 Wn. App. 422, 93 P.3d 969 (2004), for the proposition that possession of a stolen vehicle is an alternative means crime. Br. of Appellant at 6-8. *Lillard*, citing *Hickman* as authority, assumed that by listing within the to-convict instruction "the alternative definitions of 'possession' as alternative means of the offense to be proved by the State, there must be sufficient evidence to support each alternative, unless we can determine that the verdict was based on only one alternative means and that substantial evidence supports that means." 122 Wn. App. at 434-35. This reading of *Hickman* exceeds its application, which was limited to the inclusion of an additional *element* (venue) in a to-convict instruction. 135 Wn.2d at 105. It also ignores our admonition against converting definitional statutes into alternative means through inclusion in to-convict instructions. We have rejected "the notion that multiple definitions of statutory terms necessarily create either new elements or alternate means of committing a crime." *State v. France*, 180 Wn.2d 809, 818, 329 P.3d 864 (2014) (citing *State v. Smith*, 159 Wn.2d 778, 785, 154 P.3d 873 (2007); *Linehan*, 147 Wn.2d at 646); *see also Makekau*, 194 Wn. App. at 419 ("*Lillard* and *Hayes* are not persuasive because the statements in those cases about the to-convict instructions creating additional alternative means were not based on

-12-

any meaningful analysis or discussion of the issue. The courts in both cases basically assumed that including the definitional terms in the to-convict instruction created alternative means. Therefore, we do not follow the holdings in those cases.").

Consistent with the Court of Appeals' reasoning in *Makekau*, we reject Tyler's argument that the inclusion of definitional language in the to-convict instruction changed the nature of the single means crime of possession of a stolen motor vehicle. The to-convict instruction is properly read as consistent with the governing statutes, under which the definitional list of how one obtains "possession" in RCW 9A.56.140(1) enhances understanding of the single means crime in RCW 9A.56.068(1).

II. Omission of the Disjunctive "or" in the To-Convict Instructions' List of How One Possesses a Stolen Motor Vehicle Does Not Distinguish this Case from *Makekau* and Does Not Require Proof of All Means of Possession

As noted, the to-convict instruction in this case set forth the definitional list of possession without including any conjunctive ("and") or disjunctive ("or") connecting language. A separate definitional instruction contained the exact list, but with "or" inserted before the final clause, "disposed of a stolen motor vehicle." Tyler relies on the omission of the word "or" to conclude that the to-convict instruction required the jury to find he committed *all* of the acts that constitute possession: "'received, retained, possessed, concealed, [and] disposed of a stolen motor

-13-

vehicle.'" Suppl. Br. of Pet'r at 7-8 (quoting CP at 27 with "[and]" inserted by petitioner). We reject this argument.

Initially, we read individual jury instructions "'in the context of the instructions as a whole.'" *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007) (quoting *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995)); *see also State v. Hutchinson*, 135 Wn.2d 863, 885, 959 P.2d 1061 (1998) ("The jury is presumed to read the court's instructions as a whole, in light of all other instructions."). While the to-convict instruction "'serves as a yardstick by which the jury measures the evidence to determine guilt,'" *France*, 180 Wn.2d at 815 (quoting *State v. Johnson*, 180 Wn.2d 295, 306, 325 P.3d 135 (2014)), we do not read the instruction in isolation.

"Due process requires the trial court to accurately instruct the jury on every element required to convict a defendant of the crimes alleged." *State v. Rivas*, 168 Wn. App. 882, 891, 278 P.3d 686 (2012). All elements must be contained in the to-convict instruction. *See State v. Emmanuel*, 42 Wn.2d 799, 816-17, 259 P.2d 845 (1953). The "reviewing court generally 'may not rely on other instructions to supply the element missing from the "to convict" instruction.'" *Williams*, 162 Wn.2d at 182-83 (quoting *State v. DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003)). Unlike in *Emmanuel*, there is no claim here that the to-convict instruction omitted any

element. The issue here is how to read the instruction's definitional list of how one possesses stolen property. As in *Williams*, it is appropriate to consider the to-convict instruction in the context of the instructions as a whole. *See Williams*, 162 Wn.2d at 188 (viewing jury instructions as a whole to confirm sufficiency of to-convict instruction, while rejecting classification of underlying crime as an essential element of bail jumping).

Viewed in the context of the instructions as a whole, we agree with the State that the to-convict instruction is ambiguous at worst.[6] Jury instruction 3, which immediately preceded the to-convict instruction, set forth clarifying definitional language, using the disjunctive "or." CP at 26. Reading the sequential instructions together would make clear that the listed definitions of possession are the same, assuming jurors actually noticed the omission of the word "or." All essential elements are contained in the to-convict instruction, and looking to related

---

[6] At oral argument, Tyler argued that any ambiguity in to-convict instructions requires a new trial under the rule of lenity (citing *State v. Kier*, 164 Wn.2d 798, 194 P.3d 212 (2008)). *See* Wash. Supreme Court oral argument, *State v. Tyler*, No. 93770-2 (Mar. 13, 2018), at 6 min., 56 sec. through 7 min., 21 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://www.tvw.org/watch/ ?eventID=2018031094. *Kier* is distinguishable, because it involved an ambiguous *verdict* resulting from merger of first degree robbery and second degree assault, where it was unclear whether the jury found that one of the victims was robbed as well as assaulted. 164 Wn.2d at 814. Here, any ambiguity in the to-convict instruction may be resolved through reasonable construction and arises in the context of one single means crime. The merger doctrine cases are inapposite.

instructions supplies only definitions□not an added element.[7] Reading the to-convict instruction in context with the related definitional instruction is thus consistent with our long-standing general rule. *See State v. Peck*, 146 Wash. 101, 106-07, 261 P. 779 (1927) (reading a definitional instruction in the context of the jury instructions as a whole, to eliminate misunderstanding); *France*, 180 Wn.2d at 816 ("'[e]ach instruction must be evaluated in the context of the instructions as a whole'" (alteration in original) (quoting *State v. Benn*, 120 Wn.2d 631, 654-55, 845 P.2d 289 (1993))); *State v. Teal*, 117 Wn. App. 831, 837, 73 P.3d 402 (2003) ("The rule is well established that instructions must be read together and viewed as a whole." (citing *State v. Haack*, 88 Wn. App. 423, 427, 958 P.2d 1001 (1997))).

Tyler's argument that the to-convict instruction required proof of all the ways one may possess stolen property suffers from another flaw: it reads the word "and"

---

[7] The State points to our practice of considering the jury instructions as a whole even when considering ambiguity in self-defense instructions. Second Suppl. Br. of Resp't at 4 (citing *Hutchinson*, 135 Wn.2d at 885 (Read together, the instructions "adequately conveyed the law of self-defense to the jury in this case. . . . Accordingly, we hold the instructions, taken in their entirety, properly stated the law.")); *see also State v. Teal*, 152 Wn.2d 333, 339, 96 P.3d 974 (2004) ("The rule requiring that all elements of a crime be listed in a single instruction is not violated when accomplice liability is described in a separate instruction. Here, the Court of Appeals correctly determined that jury instructions are sufficient when, read as a whole, they accurately state the law, do not mislead the jury, and permit each party to argue its theory of the case. In reading the jury instructions as a whole, including the court's erroneous accomplice liability instruction, the jury could decide Teal's guilt or innocence as an accomplice to first degree robbery." (citation omitted) (citing *Emmanuel*, 42 Wn.2d at 819)).

into the instruction. Tyler invokes a default rule of grammar whereby a serial list will be read in the conjunctive in the absence of a coordinating disjunctive. *See* Suppl. Br. of Pet'r at 7-8 (citing ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 119 (2012)). While this default rule is sometimes apt (e.g., "I came, I saw, I conquered"), it has limited reach. Indeed, the authors Tyler cites note that a sentence omitting a conjunction may also be read as disjunctive, depending on context. SCALIA & GARNER, *supra*, at 119. The authors describe a statutory conjunctive list as prohibiting acts "A, B, and C," when performed together. *Id.* In contrast, the disjunctive list prohibits any of the acts, together or independently. *Id.* This latter construction aligns with RCW 9A.56.140 as enacted, prohibiting acts where one would knowingly "receive, retain, possess, conceal, *or* dispose of stolen property." (Emphasis added.)

The State notes that when given a similar opportunity, one of the treatise's authors, Justice Scalia, chose the disjunction construction when interpreting a bankruptcy code amendment that erroneously omitted the disjunctive "or," joining the majority opinion authored by Justice Kennedy. Second Suppl. Br. of Resp't at 2 (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 124 S. Ct. 1023, 157 L. Ed. 2d 1024 (2004)); *see Lamie* at 534-35 ("The statute is awkward, and even ungrammatical; but that does not make it ambiguous on the point at issue. . . . Here, the missing conjunction

neither alters the text's substance nor obscures its meaning. This is not a case where a 'not' is missing or where an 'or' inadvertently substitutes for an 'and.' The sentence may be awkward; yet it is straightforward."). The Court found plain meaning in the amendment through an interpretation that was not "'repugnant to the rest of the statute,'" or leading to absurd results requiring the Court "to treat the text as if it were ambiguous." *Id.* at 536 (quoting *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 151 L. Ed. 2d 474 (2001)).

Although the definitional statute we review here resides within a to-convict instruction, the missing disjunctive "or" mirrors the apparent scrivener's error in *Lamie*. We decline to accept Tyler's default rule and insert the word "and," as this would lead to an interpretation that would alter the statute and force an inconsistency between the definitional jury instruction 3 and the to-convict jury instruction 4. A more natural reading flows from considering the to-convict instruction in light of the instructions as a whole. Under such a reading, the to-convict instruction required the jury to find beyond a reasonable doubt that Tyler "possessed" a stolen motor vehicle, based on the defined meaning of that term. While the inclusion of additional definitional language in the to-convict instruction may have been awkward and generated debate (at least on appeal), the jury was adequately instructed, and its verdict should stand.

## CONCLUSION

Reading the instructions as a whole, the jury was properly instructed on possession of a stolen motor vehicle as a single means crime. We reject Tyler's argument that the to-convict instruction created either an "alternative means" or an "all means" crime under the law of the case doctrine set forth in *Hickman*. We affirm Tyler's conviction.

Stephens, J.

WE CONCUR:

Johnson, J.

Wiggins, J.

González, J.

Madsen, J

Owens, J

Yu, J

No. 93770-2

GORDON McCLOUD, J. (concurring)—I agree with the majority that the

statute criminalizing possession of a stolen vehicle, RCW 9A.56.068(1), describes a

single means crime. Majority at 2.

I also agree that the five different definitions of "possess" contained in RCW

9A.56.140(1), which defines the element of possession contained in that RCW

9A.56.068(1) crime, does not change this fact: those definitions do not change the

single means crime into an alternative means crime (or crimes). Majority at 8-9.

But I disagree with the majority's conclusion that the trial court's instructions

in this case made that clear to the jury. In fact, even the majority is forced to admit

that listing a series of five possible ways of defining the word "possess"—at least

one of which, "dispose," sounds like the opposite of "possess"—without the

disjunctive "or" that appears in the statutory definition is "ambiguous at

worst." Majority at 15 (citing Clerk's Papers at 26).

1

I would have stopped with that astute observation. It doesn't matter how long we read the jury instruction containing the list without the conjunction (or disjunction) "in the context of the instructions as a whole." *Id.* It remains ambiguous.

The majority says that the fact that a separate definitional instruction included the disjunctive, while the elements instruction lacked the disjunctive, shows that the jury would have known that the elements instruction really meant to include the omitted disjunctive. Majority at 15-16. But our interpretive rules compel just the opposite conclusion: the fact that certain language is included in one place but omitted from another place is generally read as evidence that the author knew how to include the limiting language when it wanted to and his or her omission of such language should be deemed intentional. *E.g., State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003); *State v. Delgado*, 148 Wn.2d 723, 727-28, 63 P.3d 792 (2003); *Jepson v. Dep't of Labor & Indus.*, 89 Wn.2d 394, 403, 573 P.2d 10 (1977). It's hard to believe that a jury would have sorted through such competing rules of interpretation —the ones that the majority goes through for several pages as well as the competing one summarized above—and necessarily come up with the correct result.

I would hold that the elements instruction is ambiguous. One could infer that the proper final connector is "or" because that is the connector used in a similar list in a different instruction; or one could infer that the proper final connector should instead be "and" because the connector used in the similar list from the different instruction was omitted from the elements instruction.

For that reason, under the law of the case doctrine,[1] which the majority acknowledges survives in our state, we must evaluate whether the evidence supported a conviction based on each of those listed factors. I believe that the answer is yes: the evidence that the partially stripped stolen car was located in a secluded area provides sufficient circumstantial evidence that Tyler not only "possess[ed]" but also at some point "receive[d]," "retain[ed]," "conceal[ed]," and "dispose[d]" of the property. One can certainly begin the process of disposing of the car by stripping and secreting it.

For these reasons, I concur.

---

[1] *State v. Hickman*, 135 Wn.2d 97, 102, 954 P.2d 900 (1998); *State v. Johnson*, 188 Wn.2d 742, 747, 399 P.3d 507 (2017).

_____
Fairhurst, C.J.