FILED
COURT OF APPEALS
DIVISION II

2015 FEB 18 AM 9: 16

STATE OF WASHINGTON

BY_____

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>JEFFREY W. WELLER,<br><br>Appellant.<br><hr>STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>SANDRA D. WELLER,<br><br>Appellant. | Consolidated Nos. 44726-6-II<br>44733-9-II<br><br><br>PART PUBLISHED OPINION |

MAXA, J. — Jeffrey Weller and Sandra Weller appeal their multiple convictions for various degrees of assault and unlawful imprisonment, as well as their exceptional sentences. The convictions arose from their abuse of their 16-year-old twins, which included multiple beatings with a board and food deprivation. The Wellers argue that the trial court erred in failing to suppress the board that officers seized from the Wellers' garage and that their exceptional sentences are invalid because their convictions could have been based on accomplice liability.

We hold that the trial court did not err in failing to suppress the board that officers seized from the Wellers' garage because the community caretaking function and plain view exceptions

to the warrant requirement were applicable. We also hold that the deliberate cruelty aggravating factor was valid to support the trial court's exceptional sentence but the ongoing pattern of abuse aggravating factor was not. Because the record does not reveal whether the trial court would have imposed the same exceptional sentences based only on the deliberate cruelty aggravating factor, we must remand for resentencing. In the unpublished portion of this opinion we address and reject the Wellers' additional arguments regarding their convictions and sentences.

Accordingly, we affirm the Wellers' convictions, but we remand to the trial court for resentencing.

## FACTS

*Report of Abuse*

Sandra and Jeffrey Weller had six children in their care and under their custody: 16-year-old twins (CW, a boy and CG, a girl[1]) adopted by Sandra[2] and her former husband, two of Jeffrey's biological children, one of Sandra's biological children, and one biological child of Sandra and Jeffrey together. In early October 2011, the twins left their therapist a note reporting abuse from their parents, stating that they were fearful and asking for help. The therapist made a mandatory report to Child Protective Services (CPS).

On October 7, CPS investigator Margie Dunn visited the Weller residence and after interviewing Jeffrey and Sandra, assessed that CW and CG were unsafe. Dunn left the Weller residence for safety reasons and called in the assistance of the Vancouver Police Department.

---

[1] Since CW and CG were minors at the time of the commission of the crimes, we use their initials to identify them.

[2] We use the defendants' first names where appropriate to avoid confusion.

2

*Welfare Check*

Officers Jensen and Aldridge and four other officers arrived at the Weller residence to conduct a welfare check. The officers believed their purpose was to evaluate the Weller home environment and the twins' credibility to determine whether the children should be removed and placed into protective custody.[3] One of the officers knocked on the front door and explained to Sandra that the purpose of their visit was to perform a welfare check on the children. The officers did not have a search warrant. Officer Aldridge asked if they could come inside and speak with Sandra and the children. Sandra stepped back from the door and the officers entered the house.

The officers attempted to talk privately with the twins. Officer Jensen and CW talked in one room. Officer Aldridge and CG talked in another room, and ultimately moved into the garage for greater privacy. Both children described being beaten repeatedly with a board.

*Discovery of the Board*

Both officers and the twins ultimately went together into the garage to talk. The only purpose in going to the garage was for privacy. CG and CW started to look around for the board, although not at the officers' direction.

Officer Aldridge was standing in the same place as when she entered the garage when she looked around and saw a board leaning against the garage wall in plain view. She asked the children if that was the board used to beat them, and they replied that it was. Officers Jensen and

---

[3] RCW 26.44.050 gives law enforcement responding for a welfare check the statutory authority to determine whether or not children should be removed from their home environment into protective custody.

3

Aldridge both reported that the board was in a position where they could clearly see it from where they were standing. Officer Jensen picked up the board, and both officers observed the board had a long groove in it as well as discoloration that appeared to be consistent with dried blood. Officer Aldridge estimated that at that time the officers had been at the Weller residence for 20 minutes and she testified that they "had no idea that this was heading toward a criminal investigation." J. Weller Report of Proceedings (RP) (Jan. 31, 2013) at 185.

*Criminal Charges*

Based on her observations, Officer Aldridge decided to remove the twins and the other children from the Weller residence. After speaking with the children, the State filed multiple charges against the Wellers, including several charges of second, third, and fourth degree assault, and several counts of unlawful imprisonment. The record is unclear on whether each was charged as both a principal and an accomplice. For most of the charges, the State alleged that each defendant's conduct manifested deliberate cruelty to the victims and was part of an ongoing pattern of abuse.

*Motion to Suppress the Board*

The Wellers moved to suppress the board, arguing that it was seized during an unlawful search of their residence without a warrant. They argued that the emergency aid exception to the warrant requirement was inapplicable because there was no immediate threat of injury to any persons and that entry into the house was a pretext for a search for evidence of a crime. The State responded that the officers' warrantless entry into the Weller residence was justified both by Sandra's consent and law enforcement's community caretaking function, and that the seizure of the board from the Weller garage was justified under the plain view doctrine.

4

At the suppression hearing, Jeffrey assumed that the emergency aid exception applied, but argued that at the time the board was found the officers were conducting a criminal investigation rather than a welfare check. Sandra also argued that law enforcement had begun a criminal investigation by the time the officers had spotted the board in the Weller garage. The trial court denied the motion to suppress, concluding in a detailed oral ruling that the officers lawfully were in the garage under the community caretaking exception and that they were authorized to seize the board because it was in plain view. The trial court did not enter written findings of fact or conclusions of law following the suppression hearing.

*Convictions and Sentences*

The case proceeded to a jury trial. The jury found Jeffrey guilty on most counts and the trial court sentenced him for five counts of second degree assault, one count of unlawful imprisonment, one count of third degree assault of a child, and two counts of fourth degree assault.[4] The jury also found Sandra guilty on most counts and the trial court sentenced her for four counts of second degree assault and one count of unlawful imprisonment.[5] For all of Jeffrey's and Sandra's convictions, the jury returned a special verdict form answering yes to the questions "Did the defendant's conduct during the commission of the crime manifest deliberate cruelty to the victim?" and "Was the crime part of an ongoing pattern of psychological or

---

[4] Several of the additional counts Sandra and Jeffrey were convicted of were dismissed because they merged into the other convictions.

[5] Sandra's appellate brief contends in its statement of facts that Sandra was convicted by complicity for her four counts of second degree assault. The jury verdicts do not state this.

physical abuse of the victim manifested by multiple incidents over a prolonged period of time?"
J. Weller Clerk's Papers (CP) at 151; S. Weller CP at 106.

The trial court imposed exceptional sentences of 240 months confinement for both Sandra and Jeffrey. Both of the exceptional sentences were based on the jury's findings that the Wellers' conduct manifested deliberate cruelty to the victims and occurred as part of an ongoing pattern of abuse.

Jeffrey and Sandra appeal their convictions and their exceptional sentences.

ANALYSIS

A.  WARRANTLESS SEIZURE OF THE BOARD

The Wellers argue that the officers seized the board used to beat CW and CG in an unlawful warrantless search of their garage, and therefore that the trial court erred in denying their CrR 3.6 motion to suppress the board. We disagree, and hold that the trial court did not err when it concluded that (1) the officers' entry into the garage to privately interview the children was lawful under the community caretaking function exception to the warrant requirement, and (2) the seizure of the board was lawful under the plain view exception to the warrant requirement.

1.    Legal Principles

Both the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution prohibit warrantless searches and seizures unless one of the narrow exceptions to the warrant requirement applies. *State v. Garvin*, 166 Wn.2d 242, 249, 207 P.3d 1266 (2009). The State bears the burden of demonstrating that a warrantless search or

6

seizure falls within an exception to the warrant requirement. *State v. Duncan*, 146 Wn.2d 166, 172, 43 P.3d 513 (2002).

The community caretaking function exception to the warrant requirement arises from law enforcement officers' community caretaking function and involves two aspects: officers rendering aid or assistance (emergency aid exception) or making routine checks on health and safety (health and safety check exception). *State v. Schultz*, 170 Wn.2d 746, 754, 248 P.3d 484 (2011); *State v. Thompson*, 151 Wn.2d 793, 802, 92 P.3d 228 (2004); *State v. Kinzy*, 141 Wn.2d 373, 386, 5 P.3d 668 (2000). Another exception to the warrant requirement is the plain view exception, which allows officers to seize an object if they are lawfully present in a constitutionally protected area and the object is in plain view.[6] *State v. Hudson*, 124 Wn.2d 107, 114, 874 P.2d 160 (1994).

When reviewing the denial of a suppression motion, we determine whether substantial evidence supports the trial court's findings of fact and whether the findings support the conclusions of law. *Garvin*, 166 Wn.2d at 249. We review de novo the trial court's conclusions of law pertaining to the suppression of evidence. *Id.* Specifically, whether an exception to the warrant requirement applies is a question of law that we review de novo. *See id.*

---

[6] Another exception is consent. *State v. Ferrier*, 136 Wn.2d 103, 111, 960 P.2d 927 (1998). But the State does not argue that the Wellers' consented to the officers' entry into their garage by opening the door and allowing them to come in to their house. And mere acquiescence when officers enter a home does not constitute consent. *Schultz*, 170 Wn.2d at 757, 759.

2. Failure to Enter Written Findings and Conclusions

Sandra initially argues that the trial court erred by failing to enter written findings of fact and conclusion of law supporting its CrR 3.6 ruling. Although failure to enter findings of fact and conclusions of law is error, such error is harmless if the trial court's oral findings are sufficient to permit appellate review. *See State v. Bluehorse*, 159 Wn. App. 410, 423, 248 P.3d 537 (2011).

Here, the trial court provided a detailed oral ruling that included numerous oral factual findings regarding the officers' conduct and the events leading up to the seizure, and legal conclusions regarding the applicability of exceptions to the warrant requirement. As a result, we hold that the trial court's oral findings and conclusions are sufficient to permit appellate review.[7]

3. Community Caretaking Function Exception

The Wellers argue that the trial court erred in reaching a legal conclusion that the officers' presence in the Wellers' garage was lawful under the community caretaking function exception to the warrant requirement. We disagree.

---

[7] The State also argues that in oral argument of the CrR 3.6 suppression motion, the Wellers abandoned any arguments that (1) the emergency aid exception to the warrant requirement did not justify the officers' initial entry into their house, and (2) the plain view doctrine does not apply. As a result, the State claims that the Wellers are precluded from making these arguments on appeal. We disagree. The Wellers did argue below in Jeffrey's written motion (although not at oral argument) that the emergency aid exception was inapplicable, and the court ruled on that issue as well as the plain view issue. Accordingly, we hold that the Wellers did not waive their arguments on these issues.

a.    Two Aspects of Community Caretaking

Our Supreme Court has recognized a "community caretaking function" exception to the warrant requirement. *Thompson*, 151 Wn.2d at 802; *Kinzy*, 141 Wn.2d at 386. "This exception allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance or when making routine checks on health and safety." *Thompson*, 151 Wn.2d at 802. As noted in *Thompson*, there are two aspects to the community caretaking function: (1) the emergency aid exception, *Schultz*, 170 Wn.2d at 754, and (2) the health and safety check exception.[8] *Kinzy*, 141 Wn.2d at 387. The emergency aid exception involves greater urgency and allows searches resulting in a greater intrusion. *Id.* at 386.

A search pursuant to the community caretaking function exception must be totally divorced from a criminal investigation. *Id.* at 385. The exception does not apply where an officer's primary motivation is to search for evidence or make an arrest. *State v. Williams*, 148 Wn. App. 678, 683, 201 P.3d 371 (2009).

Both the State and the Wellers focus on the emergency aid exception to the warrant requirement, but the trial court's oral ruling also could be interpreted as applying the more

---

[8] The cases have been less than clear about whether the community caretaking function exception and the emergency aid exception are synonymous or separate. However, *Kinzy* makes it clear that the community caretaking function exception involves both emergency aid and routine health and safety checks. 141 Wn.2d at 386-87. And our Supreme Court more recently noted that the emergency aid exception is a "subset" of the community caretaking exception. *State v. Smith*, 177 Wn.2d 533, 541, 303 P.3d 1047 (2013).

general exception for routine health and safety checks.[9] Because we decide this issue based on the health and safety check aspect exception as discussed below, we do not address the emergency aid exception.

      b.    Health and Safety Check Exception

To invoke the health and safety check exception, the State must show that (1) the officer subjectively believed someone needed health or safety assistance, (2) a reasonable person in the same situation would believe that there was a need for assistance, and (3) there was a reasonable basis to associate the need for assistance with the place searched.[10] *Thompson*, 151 Wn.2d at 802. Next, the State must show that the encounter under this exception was reasonable, which depends upon a balancing of the individual's interest in freedom from police interference against the public's interest in having the police perform a community caretaking function. *Thompson*, 151 Wn.2d at 802. "When weighing the public's interest, this [c]ourt must cautiously apply the community caretaking function exception because of the potential for abuse." *Kinzy*, 141 Wn.2d at 391.

Here, the three requirements for application of the health and safety check exception clearly were satisfied. The officers subjectively and reasonably believed that the Weller children needed health or safety assistance. A trained CPS investigator relayed to the officers her

---

[9] The trial court ruled that the officers' search of the Wellers' garage was lawful because they were within the scope of their community caretaking function at the time. The trial court stated that the community caretaking function also was referred to as the "Health and Safety Emergency," which seems to merge the two separate exceptions. J. Weller RP (Feb. 1, 2013) at 287.

[10] These also are the first three parts of the test for application of the emergency aid exception, which also includes three additional requirements. *Schultz*, 170 Wn.2d at 754-761.

professional opinion that the Weller children were not safe and were expressing severe fear. And the officers had a reasonable basis to associate the need for assistance with the Wellers' residence – the CPS official told them that the children were in the residence. Further, based on this information, the balancing process shows that the officers' initial entrance into the Weller residence was justified because the public's interest in having the officers perform a welfare check on the children outweighed the Wellers' privacy interests in the foyer of their residence. *See Thompson,* 151 Wn.2d at 802.

Once the officers moved into other rooms of the residence and ultimately to the garage, the Wellers' privacy interests became more significant – entering a residence's garage is more intrusive than entering the foyer. However, the trial court expressly found that the officers had no pretextual purpose in entering the residence, that at all times they were engaged in the community caretaking function. These findings are supported by the evidence, which shows that the officers' only purpose in entering the Wellers' residence and later their garage was to carry out their community caretaking function. Specifically, the evidence shows that the officers were in the garage because they were trying to find a private place to interview the children in conjunction with their welfare check. Further, the trial court found that the officers simply "ended up in the garage." J. Weller RP (Feb. 1, 2013) at 288. Nothing in the record suggests that the officers were searching the garage or looking for evidence.

The trial court did not expressly state that it engaged in the balancing process required for application of the health and welfare check exception. Nevertheless, the trial court's factual findings support the conclusion that under the circumstances of this case, the officers' entry into the garage in order to properly conduct their welfare check outweighed the Wellers' privacy

11

interest in their garage. Accordingly, we affirm the trial court's application of the community caretaking function to the officers' entrance into the Wellers' residence and garage.

4. Plain View Doctrine

The "plain view" exception to the warrant requirement applies when officers (1) have a valid justification for being in a constitutionally protected area, and (2) are immediately able to realize that an item they can see in plain view is associated with criminal activity. *State v. Hatchie*, 161 Wn.2d 390, 395, 166 P.3d 698 (2007). The test for determining when an item is immediately apparent for purposes of a plain view seizure is whether, considering the surrounding circumstances, the police can reasonably conclude that the item is incriminating evidence. *Hudson*, 124 Wn.2d at 118. Officers do not need to be certain that the item is associated with criminal activity – probable cause is sufficient. *See id.*

Here, we hold that the officers were lawfully present in the Wellers' garage. Further, the surrounding facts and circumstances allowed the officers to reasonably conclude that the board was evidence of a crime. The officers initially arrived at the scene where they were informed of the twins' CPS report, which alleged frequent beatings with a potentially bloody board. As the welfare check progressed, both twins reported separately to each officer that Jeffrey would periodically beat them with a board. Further, when the officers were in the garage, the children began to look for the board. And the children immediately confirmed that the board Officer Aldridge saw was in fact the board used to beat them.

The trial court did not enter any specific factual findings regarding plain view. However, these facts support the conclusion that the officers could have reasonably concluded after listening to the twins' reports that the board Officer Aldridge saw in the garage was the board

12

used to beat the children and therefore was incriminating evidence. As a result, we hold that the plain view exception to the warrant requirement applied to the officers' seizure of the board. We affirm the trial court's denial of the Wellers' motion to exclude the board.

B.     EXCEPTIONAL SENTENCES

The Wellers argue the trial court erroneously imposed their exceptional sentences because the jury did not expressly find that the deliberate cruelty and ongoing pattern of abuse aggravating factors were based on principal liability as opposed to accomplice liability. We hold that the deliberate cruelty aggravating factor was a valid basis for the trial court's imposition of the exceptional sentences, but the ongoing pattern of abuse aggravating factor was not. Because we cannot determine from the record whether the trial court would have imposed the same exceptional sentences based on only the deliberate cruelty aggravating factor, we must remand for resentencing.[11]

1.     Deliberate Cruelty Aggravating Factor

In order for the trial court to impose an exceptional sentence, the aggravating factor supporting the exceptional sentence generally must be based on the defendant's own conduct. *State v. Hayes*, No. 89742-5, 2015 WL 481023, at *2 (Wash. Feb. 5, 2015). As a result, an aggravating factor cannot be applied to an accomplice unless the accomplice's own conduct or knowledge of the principle's conduct informs the aggravating factor. *Id.*

---

[11] The Wellers also argue that their exceptional sentences were based in part on judicial fact finding, which violated their Sixth Amendment jury trial right. We disagree. Here, the jury – and not the trial court – found the two aggravating factors. And the trial court expressly relied on those findings in imposing the exceptional sentences. Although the trial court ruled that the jury's findings were supported by the evidence, it properly was evaluating the evidence supporting the jury's findings before imposing the exceptional sentences.

13

The Wellers argue that this rule applies to the deliberate cruelty aggravating factor because the trial court's instructions allowed the jury to convict each of them as an accomplice. However, here there is no possibility that the jury found the aggravating factor for one of the Wellers based on the conduct of the other. Instead, for each charge of each defendant the jury was asked, "Did *the defendant's conduct* during the commission of the crime manifest deliberate cruelty to the victim?" *E.g.*, J. Weller CP at 151; S. Weller CP at 106 (emphasis added). And for each count the jury answered in the affirmative. Therefore, the trial court's imposition of an exceptional sentence based on the deliberate cruelty aggravating factor was based on Jeffrey's and Sandra's own conduct, regardless of whether their convictions were based on accomplice liability.

We hold that the deliberate cruelty aggravating factor was a valid basis for the trial court's imposition of the Wellers' exceptional sentences.

2. Ongoing Pattern of Abuse Aggravating Factor

Unlike the deliberate cruelty aggravating factor, the jury's finding of the ongoing pattern of abuse aggravating factor for both Jeffrey and Sandra could have been based on each other's conduct. For each charge the jury was asked, "Was the *crime* part of an ongoing pattern of psychological or physical abuse of the victim manifested by multiple incidents over a prolonged period of time?" *E.g.*, J. Weller CP at 151; S. Weller CP at 106 (emphasis added). The jury answered in the affirmative. As a result, the jury did not specifically find that either Jeffrey or Sandra engaged in an ongoing pattern of abuse or that either Jeffrey or Sandra knew the other engaged in an ongoing pattern of abuse. *Hayes*, 2015 WL 481023, at *2.

14

The State concedes that the ongoing pattern of abuse aggravating factor was not valid with regard to Sandra. We accept the State's concession. The court's instructions allowed Sandra to be convicted as an accomplice, and the jury did not find that either Sandra's conduct or her knowledge of Jeffrey's conduct informed the aggravating factor. *Hayes*, 2015 WL 481023, at *2.

However, the State does not concede that the ongoing pattern of abuse aggravating factor is invalid as to Jeffrey. The State argues that based on the evidence, the jury could only have convicted Jeffrey as a principal and not as an accomplice. We disagree.

With regard to the beatings of the children, the children's testimony was that only Jeffrey administered those beatings while Sandra encouraged him. However, there also were other forms of abuse – such as withholding food from the children – for which the jury could have found that Sandra was the principal and Jeffrey was the accomplice. And the State chose to charge Jeffrey as an accomplice. Therefore, it is possible that the jury could have convicted Jeffrey as an accomplice to Sandra's abuse rather than convicting him as a principal for the beatings. Under these circumstances, the jury's finding of the ongoing pattern of abuse aggravating factor as to Jeffrey could have been based on Sandra's conduct, and therefore was not a valid basis for the imposition of an exceptional sentence.

We hold that the ongoing pattern of abuse aggravating factor was not a valid basis for the trial court's imposition of an exceptional sentence for either Jeffrey or Sandra.

3. Exceptional Sentence Based on One Valid and One Invalid Factor

The State argues that as long as one aggravating factor supports the trial court's exceptional sentences, those sentences can be affirmed even though another aggravating factor

15

supporting the exceptional sentence is held to be an invalid basis for imposing the sentences. The State argues that we should affirm the trial court's imposition of the exceptional sentence based solely on the deliberate cruelty aggravating factor. We disagree.

A reviewing court can affirm an exceptional sentence even though not every aggravating factor supporting the exceptional sentence is valid. "Where the reviewing court overturns one or more aggravating factors but is satisfied that the trial court would have imposed the same sentence based upon a factor or factors that are upheld, it may uphold the exceptional sentence rather than remanding for resentencing." *State v. Jackson*, 150 Wn.2d 251, 276, 76 P.3d 217 (2003). This rule is particularly appropriate when the trial court expressly states that the same exceptional sentence would be imposed based on any one of the aggravating factors standing alone. *See State v. Nysta*, 168 Wn. App. 30, 54, 275 P.3d 1162 (2012).

Here, the trial court stated that both the deliberate cruelty aggravating factor and the ongoing pattern aggravating factor independently provided authority to order the exceptional sentence. However, the trial court did not specifically state that it would impose the same length of exceptional sentence based on each of the aggravating factors standing alone. Therefore, the record is unclear as to how the trial court would have sentenced the Wellers if it had not considered the ongoing pattern aggravating factor.

Based on the record before us, we would need to speculate to hold that the trial court would have imposed the same exceptional sentences based on only the deliberate cruelty aggravating factor. Accordingly, we must remand to the trial court for resentencing.

CONCLUSION

We affirm the Wellers' convictions, but we remand to the trial court for resentencing.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

In the unpublished portion of this opinion, we address and reject the Wellers' remaining arguments. We hold that (1) the information charging the Wellers with unlawful imprisonment was not required to contain the statutory definition of "restrain," (2) Washington's accomplice liability statute is not unconstitutionally overbroad, and (3) Sandra's statement of additional grounds (SAG) assertions do not support reversal.

A.    Right to Notice – Charging Document

The Wellers argue that the information charging them with unlawful imprisonment failed to allege the essential elements of the charge. Specifically, the information alleged that they "knowingly restrain[ed]" the children. J. Weller CP at 3-4. The Wellers assert that an information that only alleges "knowing restraint" is inadequate because it does not include the statutory definition of "restraint." Br. of Appellant J. Weller at 12-13.

Our Supreme Court expressly rejected this argument in *State v. Johnson*, 180 Wn.2d 295, 325 P.3d 135 (2014). The court held that the information charging unlawful imprisonment need include only the statutory elements of unlawful imprisonment, as was done here. *Id.* at 300-03. Accordingly, based on *Johnson* we hold the information charging the Wellers was constitutionally sufficient.

B.    Accomplice Liability Statute

Jeffrey contends that Washington's accomplice liability is overbroad because it criminalizes constitutionally protected speech. We rejected this argument in *State v. Ferguson*,

17

164 Wn. App. 370, 375-76, 264 P.3d 575 (2011). The other divisions of this court also have rejected this argument. *State v. Holcomb*, 180 Wn. App. 583, 590, 321 P.3d 1288, *review denied*, 180 Wn.2d 1029 (2014); *State v. Coleman*, 155 Wn. App. 951, 961, 231 P.3d 212 (2010). Under *Ferguson*, we hold that the accomplice liability statute is not unconstitutional.

C.     SANDRA WELLER'S SAG

Sandra's SAG argues three main issues: (1) the officers unconstitutionally searched her house without a warrant, (2) several of the facts presented at trial were erroneous, and (3) there was insufficient evidence to support her convictions or her exceptional sentence. We hold that none of these contentions support reversal of Sandra's convictions or sentence.

A defendant may file a SAG, subject to limitations. First, we consider an issue in a SAG only where it adequately informs us of the nature and occurrence of alleged errors. RAP 10.10(c); *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Second, we consider only arguments that we did not already adequately address as raised by the defendant's appellate counsel. *See* RAP 10.10(a) (providing that the purpose of a SAG is to "identify and discuss those matters related to the decision under review that the defendant believes have not been adequately addressed by the brief filed by the defendant's counsel"). Third, issues involving facts outside of the record are properly raised in a personal restraint petition (PRP), not in a SAG. *Alvarado*, 164 Wn.2d at 569.

1.    Search of House

With regard to Sandra's first SAG contention, her appellate counsel already addressed the issue of whether the search of the Weller residence was constitutional. Therefore, we need not separately address Sandra's argument on this issue. *See* RAP 10.10(a).

18

2.    Erroneous Trial Testimony

We also do not address Sandra's many contentions that several of the facts testified to at trial were not in accordance with the truth. These issues depend on matters outside the record before us in this direct appeal. As a result, we cannot consider them in this direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). They are more properly raised in a PRP. *Id.*

3.    Sufficient Evidence for Convictions

Evidence is sufficient to support a conviction if after viewing the evidence in the light most favorable to the prosecution, we determine that a rational fact finder would have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We defer to the trier of fact on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

In this case, Sandra was found guilty and sentenced on four counts of second degree assault and one count of unlawful imprisonment. The jury's verdict does not make explicit whether it found Sandra guilty under a theory of principal or accomplice liability. However, the State argued at trial that Sandra was an accomplice to Jeffrey in the assault and unlawful imprisonment of CW and CG.

To support a conviction for second degree assault, the State must show there was (1) an assault with (2) a deadly weapon. RCW 9A.36.021(1)(c). Here, the State presented evidence that Sandra encouraged Jeffrey to hit the Weller children with a board, which resulted in beatings so ferocious that they drew blood and resulted in at least one broken bone and permanent skin

discoloration. This evidence is sufficient to support Sandra's convictions for second degree assault.

To support a conviction for unlawful imprisonment, the State must show Sandra (1) restricted another's movements, (2) without that person's consent, (3) without legal authority, and (4) in a manner that substantially interfered with that person's liberty. RCW 9A.40.040; *Johnson*, 180 Wn.2d at 301-02. Here, the State presented evidence that (1) CG was forced to remain for most of the day in her locked room, with an alarm on the outside of the door, and a missing inside door handle; (2) she was only able to leave her room with Sandra's or Jeffrey's permission; and (3) she was locked in her room with such frequency that her younger siblings cut a hole in between their bedroom walls to pass food through to CG. Because CG was unable to leave her room, her younger siblings testified that they took it upon themselves to procure food for her. This evidence is sufficient to support Sandra's convictions for unlawful imprisonment.

Viewing the evidence in the light most favorable to the State, the evidence was sufficient for any rational trier of fact to find beyond a reasonable doubt that Sandra was guilty of four counts of second degree assault and one count of unlawful imprisonment. Therefore, we hold that there was sufficient evidence to support her convictions.

4. Sufficient Evidence for Exceptional Sentence

Sandra argues that there was insufficient evidence to support the jury's finding of the aggravating factors that supported her exceptional sentence. We disagree with regard to the deliberate cruelty aggravating factor. The trial court carefully outlined the facts supporting this factor, and ruled that the evidence was sufficient to support the jury's findings. We hold that the evidence clearly supports the jury's finding that Sandra engaged in deliberate cruelty.

We need not address this argument regarding the ongoing pattern of abuse aggravating factor because we hold above that this factor was not valid with regard to Sandra.

We affirm the Wellers' convictions, but we remand for resentencing.

_____
MAXA, J.

We concur:

_____
JOHANSON, C.J.

_____
SUTTON, J.